UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,

    -against-

BONZELEE NIMMONS, also known as Boo,
MICHAEL HEWITT, and
CHANEL GROOM,

                     Defendants.
------------------------------------------------------------- x

SUMMARY ORDER

17-cr-164 (S-1) (ENV)

VITALIANO, D.J.

    Jury selection in this case is scheduled to start on April 15, 2019. Defendants Bonzelee Nimmons, Michael Hewitt and Chanel Groom have filed pre-trial motions. *See* Dkt. Nos. 120 ("Groom Br."), 122 ("Hewitt Br."), 123 ("Nimmons Br."); *see also* Dkt. Nos. 130 ("Gov't Opp."), 134 ("Nimmons Reply"). Having considered the submissions of the parties and the arguments made by counsel at the hearing held on March 1, 2019, the pre-trial motions are resolved in the manner and for the reasons as set forth below.

    I.    Motions to Sever

    Count One, which is first in line in the indictment but covers alleged conduct that occurred latest in time, charges Groom, Hewitt, Nimmons and others with conspiring to distribute methamphetamine. Groom and Hewitt move to sever it from the other two counts, which name Nimmons but not them, and which charge possession of cocaine base and a separate conspiracy to distribute methamphetamine. Movants' arguments, to say the least, do not plow a new field. Whether they seek severance or not, all criminal defendants oppose a joint trial with others they view as more culpable, or as bringing more baggage to trial in the form of additional criminal conduct charged against the other defendant alone or for permitting the introduction of

1

other bad acts against them that the jury otherwise would not hear. A joint trial provokes, as it does here, the cry of "spillover prejudice" – that is, the evidence introduced against the joined defendant will spill over and substantially prejudice and harm a defendant against whom the evidence was not admitted.

In counterpoint is the high value the law places on joint trials. Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 937, 122 L. Ed. 2d 317 (1993). "The defendant seeking a severance must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984); *see also Zafiro*, 506 U.S. at 539 ("[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

Groom and Hewitt are long on forecasting doom but very short in showing a real threat of incurable spillover prejudice. They have failed to demonstrate why standard curative jury instructions would not work in this case; and certainly not in a way that comes close to carrying their burden in these circumstances. More to the point, far from complicated, they are charged "with a single conspiracy to distribute drugs that lasted approximately seven days." Gov't Opp. at 11. Groom and Hewitt's assertions that a joint trial would last more than six weeks, *see* Groom Br. at 6,[1] or that a jury would find it "very difficult" to "compartmentalize the evidence

---

[1] At a conference that included a discussion of trial scheduling, the government, as it has said

of the separate Methamphetamine conspiracies," *see* Hewitt Br. at 5, are not only factually unsubstantiated, but they also stand in sharp contrast to arguments made by counsel for Nimmons on his suppression motion, *see infra*, extolling the simplicity of the investigatory tasks presented in this case. As a consequence, having failed to carry their burden, the motions of Groom and Hewitt for severance are denied.

Additionally, Nimmons moved for severance, but on a totally unrelated ground. His motion is founded on *Crawford v. Washington*, 541 U.S. 36 (2004), and *Bruton v. United States*, 391 U.S. 123 (1968). Dispositively, the concern that prompted that motion has been taken off the table. The government has represented that it does not anticipate introducing the post-arrest statements of any defendant at trial. Gov't Opp. at 28. Accordingly, Nimmons's motion is denied as moot.

II. Motions to Suppress

A. The Wiretap

Nimmons moves to suppress all communications and data intercepted through an authorized Title III wiretap of his cell phone. He claims the authorization was deficient because the sworn factual showing in the application for that order did not meet the "necessity" requirement of 18 U.S.C. § 2518(1).[2] To that point, "an affidavit offered in support of a wiretap warrant must provide some basis for concluding that less intrusive investigative procedures are not feasible." *United States v. Lilla*, 699 F.2d 99, 103 (2d Cir. 1983). Critically, however, once

---

consistently, estimated that the trial will last less than two weeks. *See* Gov't Opp. at 12. No significantly different utterances were heard.

[2] Without deciding whether all or any of Nimmons's potential motions would be timely, the Court observes that, in addition to his motion to suppress the fruits of the wiretaps, Nimmons purports to "reserve" his right to move *in limine* for an audibility hearing, a *Franks* hearing and to suppress any tapes that the government designates as trial exhibits. Nimmons Br. at 2.

3

a judge has reviewed a Title III application and found the application to make a sufficiently strong showing of necessity, and the judicially approved intercept has been undertaken, a subsequent challenge to the "necessity" of the wiretap is not subject to *de novo* review. In determining whether the necessity requirement is satisfied, a "reviewing court's determination [on the necessity of a warrant] should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).

With respect to the instant wire intercept order, Judge Donnelly had a substantial factual basis for the finding of probable cause justifying her October 19, 2016, December 5, 2016, and January 30, 2017 orders. The affidavits submitted in support of the wiretap application and each of its extensions illustrated, *inter alia*, that numerous other investigative methods had already been used. *See* Gov't Opp. at 15. Those affidavits informed Judge Donnelly that a confidential informant had been employed but was inadequate. *Id.* at 16. She was also advised of a subsequent safety risk in that Nimmons was, the government believed, "looking to rob the undercover officer" who had been dealing with him. *Id.* at 17. The warrant application also explained to Judge Donnelly that the location at the center of the investigation "made surveillance particularly difficult" because of its residential nature. *Id.*

These factual excerpts, from the more fulsome explanation in the supporting affidavits, make clear that wire intercepts were critical to a full investigation of the now charged crimes, thus satisfying the necessity requirement essential to a showing of probable cause. Manifestly, in line with the standard applicable to a pre-trial challenge to a judicially authorized wiretap order, the Court finds that Nimmons has failed to carry his burden and that there is a substantial basis in the record supporting Judge Donnelly's orders. The motion by Nimmons to suppress the

communications and data intercepted and seized from his cell phone is, therefore, denied.

B.   Search of the Automobile

Hewitt moves to suppress the evidence seized from the car he was driving following a warrantless search on the ground that the searching officers lacked probable cause. The circumstances here clearly implicate the "'automobile exception' to the Fourth Amendment warrant requirement," which declares that "police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). Probable cause exists "where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012).

With no showing of any facts to the contrary, the constitutionality of the search is supported by the account of the surveilling officers, who, the record shows, had reason to believe Nimmons had arranged to sell drugs to one of his customers. The officers, for instance, had observed Nimmons exit his own vehicle and enter Hewitt's car. *See generally* Gov't Opp. at 21-24. To shield himself from the search, Hewitt argues that the officers had merely engaged in "guesswork and speculation." *See* Hewitt Br. at 3. His argument is disconnected from the rest of the record. In addition to the observation of the cat and mouse maneuvers of the target vehicles and their passengers, the officers who conducted the search had the benefit of wire intercepts that helped shape their understanding that the movement of vehicles and passengers appeared to be a drug sale in progress, suggesting the transfer of drugs from Nimmons's car to Hewitt's car.

The totality of the circumstances here, "viewed through the lens of common sense, would

5

make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248, 133 S. Ct. 1050, 1058, 185 L. Ed. 2d 61 (2013). Plainly, under the applicable standard, a warrantless search of Hewitt's car under the "automobile exception" was justified. Hewitt's motion to suppress the fruits of it is denied.

    III.    Assorted Disclosure Demands

Hewitt and Groom move to compel disclosure of the government's intended Rule 404(b) evidence. Rule 404(b) requires the government to provide reasonable notice of its proposed use of such evidence. Courts in the Second Circuit have "generally interpreted 'reasonable notice' to be ten days to two weeks before trial." *United States v. James*, No. 02 CR 0778 (SJ), 2007 WL 914242, at *8 (E.D.N.Y. Mar. 21, 2007); *see also United States v. Heredia*, No. 02 CR. 1246 (SWK), 2003 WL 21524008, at *10 (S.D.N.Y. July 3, 2003). Accordingly, as with all other motions *in limine* that any party intends to offer, motions *in limine* regarding the introduction of Rule 404(b) evidence shall be filed by March 29, 2019, and responses shall be filed by April 5, 2019.

Hewitt and Groom also seek disclosure of expert materials pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). The government has already provided defendants with laboratory results of tests on pills seized from Hewitt's car, the name of the analyst who performed the tests and reports that "disclose the name of the analyst that the government anticipates calling to testify at trial." Gov't Opp. at 28. Since it has not been formally withdrawn, the motion is denied as moot.

Groom moves for the usual collection of yet to be produced documents and information under *Brady* and *Giglio* and 3500 material under the Jencks Act. The government has acknowledged its obligations under *Brady* and will provide any additional compliant disclosures

6

when such information or documents come into its possession. Notwithstanding any right it might have to delay other disclosures, in line both with the general practice in this district and the Court's discussion at the argument on March 1, 2019, the government will produce the balance of the material no later than one week before jury selection. The motion, therefore, is granted to the extent indicated but is otherwise denied.

Groom's final motion, pursuant to Rule 16, is for her post-arrest statements, along with a companion motion to suppress them. The government has already made this information available to her. Additionally, it has also represented that it does not intend to use Groom's post-arrest statements to law enforcement during its case-in-chief. *Id.* Accordingly, the Court understands that this motion has been withdrawn, but, if not, it is denied as moot

So Ordered.

Dated: Brooklyn, New York
      March 6, 2019

                                              /s/ Hon. Eric N. Vitaliano
                                              ERIC N. VITALIANO
                                              United States District Judge